# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4332-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

N.K.,

      Defendant-Appellant.

_____

Submitted February 9, 2022 – Decided February 24, 2022

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 13-02-0159.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant N.K. appeals from an order denying his post-conviction relief (PCR) petition. He contends the court erred by rejecting his claim that his counsel was ineffective by failing to request a competency hearing at trial and by failing to assert a diminished capacity defense. Unpersuaded by defendant's arguments, we affirm.

I.

A grand jury charged defendant in an indictment with second-degree sexual assault, N.J.S.A. 2C:14-2(b), third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), and fourth-degree lewdness, N.J.S.A. 2C:14-4(b)(1). The charges were founded on a claim defendant exposed and touched his penis in the presence of a twelve-year-old boy, R.O.[1] We detailed the evidence presented at trial in our decision affirming defendant's convictions on his direct appeal, State v. N.K., No. A-5163-14 (App. Div. Feb. 5, 2018) (slip op. 2-5),[2] and need not repeat all the details here. We briefly summarize the evidence to provide context for our discussion of defendant's PCR claims.

_____

[1] We use initials to identify defendant and the victim to protect the victim's privacy and because the names of victims of sexual assault are excluded from public access under Rule 1:38-3(d)(12).

[2] The Supreme Court denied defendant's petition for certification. State v. N.K., 235 N.J. 173 (2018).

R.O. testified that while he took a shower in the bathroom at a community pool, he saw defendant taking a shower at the showerhead next to him. Id. at 2. R.O. observed defendant pull down his swim trunks, pull on his exposed penis, and tell R.O. "not to be afraid" because "no one was watching." Ibid. R.O. and defendant separately left the bathroom and returned to the pool. Ibid.

R.O. later returned to the shower, and defendant returned as well. Ibid. Defendant again took out his penis but did not touch it. Id. at 2-3. R.O. saw defendant's penis "start[] to get bigger" and "more stiff." Id. at 3. Defendant asked R.O. if he could take out R.O.'s penis for him and suck on it. Ibid.

R.O. reported the encounters with defendant to his aunt, E.M., who worked at the pool. Ibid. She approached defendant, slapped him, and said "You know what you did." Ibid. Defendant responded, "I didn't touch him." Ibid.

Defendant testified at trial and offered a detailed and different account of what occurred in the shower. Ibid. He said that while he was taking a shower, he observed R.O. masturbating, and he told R.O. that it was a public shower and "not a place to be playing with yourself." Id. at 4. Defendant said he saw R.O. expose his penis and then R.O. told him to "Suck my dick." Ibid. Defendant testified he said "Okay" because he "had enough of the conversation." Ibid.

A-4332-19

Defendant also testified R.O. subsequently turned on the showerhead and screeched because the water was too hot.  Ibid.  According to defendant, he told R.O. to use another showerhead, and, then he introduced himself to the boy. Ibid.

Defendant further testified E.M. later punched him in the face and said he disrespected R.O. in the shower.  Id. at 5.  He denied touching or exposing himself in the shower for his own sexual gratification or to demoralize R.O. Ibid.  Defendant theorized that R.O. fabricated the story out of fear defendant would report what he had seen R.O. doing in the shower.  Ibid.

Defendant was tried over the course of eight days.[3]  On the sixth day of trial, defendant and a police officer testified, and the attorneys gave their closing arguments.  Defendant, however, did not appear on seventh day, September 12, 2014.  His counsel first reported to the court defendant left him a voicemail stating he was in the hospital, he believed he was going to be admitted, and his cell phone would most likely be off.  Defendant did not provide counsel the name of the hospital or his condition.  It was later determined the information

---

[3]  The dates of trial included September 3, 4, 5, 8, 9, 10, 11, 12, 15, and 16.  The first three days of trial were devoted to jury selection.  Testimony and evidence were presented on September 8, 9, 10, 11.  The court gave final instructions to the jury on September 12, the jury began its deliberations that day, and the jury returned a verdict on September 16, after two days of deliberations.

A-4332-19

defendant left in the voicemail was false.  In fact, defendant had arranged a flight to the Dominican Republic, traveled to the airport, and went to the Dominican Republic that day.  When defendant failed to appear, the court gave its final instructions to the jury, which deliberated for two days before returning its verdict.  Defendant was arrested in the Dominican Republic and returned to New Jersey days after the jury's verdict.

The jury convicted defendant of the three charges in the indictment. Defendant's counsel then moved for a new trial arguing defendant had not been competent to stand trial because he abused drugs and alcohol during the trial, used heroin each day he was on trial, and "ingested a large amount of heroin on the morning" of the day he testified.  Defendant claimed the heroin and alcohol made him "sleepy" during the trial, and he offered an explanation for his failure to appear for the last few days of trial, stating that after using a "large amount of heroin and alcohol" he did not recall "much" of what happened other than he learned he "had landed in the Dominican Republic."

In a detailed written opinion, the trial judge denied the motion, explaining she observed defendant momentarily close his eyes during the early stages of jury selection, she mentioned her observation to trial counsel, and thereafter she paid very close attention to defendant during the remainder of the trial.  She

5

noted that she never saw defendant appear sleepy thereafter, and she observed that defendant was alert and responsive during his trial testimony, including during the State's vigorous cross-examination.

The court explained following its initial observation of defendant during jury selection, it did not observe any signs of defendant sleeping or being intoxicated during the trial and the court noted defense counsel never raised an issue concerning defendant's competence. The court denied defendant's motion for a new trial, and we affirmed the denial on defendant's direct appeal. Id. at 13.

Defendant subsequently filed a timely pro se PCR petition and, following the assignment of counsel, submitted a certification asserting in pertinent part that he has a mental health and substance abuse history. He claimed that during the months leading to his trial he used heroin and consumed alcohol daily, and that during trial his counsel told him he "smelled of alcohol" and he "appeared high." Defendant further averred he "was extremely high during jury selection when the court observed [him] asleep," and his decision to flee the country was an example of his "inability to think clearly and fail[ure] to exercise good judgment due to [his] excessive and protracted use of controlled substances and alcohol." He claimed he spoke to trial counsel about undergoing a substance

6

abuse evaluation, but he could not afford one and his counsel did not advise him that he might qualify for "ancillary services" from the Office of the Public Defender.

The court heard argument and rendered a comprehensive bench opinion denying the PCR petition.[4] The court determined defendant failed to present sufficient evidence establishing a prima facie ineffective assistance of counsel claim and rejected defendant's claim he was entitled to an evidentiary hearing. The court entered an order denying the petition, and this appeal followed. He presents the following argument for our consideration:

> POINT I
>
> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILURE TO PURSUE A COMPETENCY HEARING AND/OR A D[I]MINISHED CAPACITY DEFENSE.

## II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed

---

[4] The court also denied defendant's recusal motion. We do not address the motion because defendant does not appeal from its denial.

A-4332-19

questions of fact and law.  Id. at 420.  Where, as here, an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court."  Id. at 421.  We apply these standards here.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee that a defendant in a criminal proceeding has the right to the assistance of counsel in his or her defense.  The right to counsel includes "the right to the effective assistance of counsel."  State v. Nash, 212 N.J. 518, 541 (2013) (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)).

In Strickland, the Court established a two-part test, later adopted by our Supreme Court in State v. Fritz as the standard under the New Jersey Constitution, to determine whether a defendant has been deprived of the effective assistance of counsel.  Strickland, 466 U.S. at 687; Fritz, 105 N.J. 42, 58 (1987).  Under the first prong of the standard, a petitioner must show that counsel's performance was deficient.  It must be demonstrated that counsel's handling of the matter "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687-88.

Under the second prong of the Strickland standard, a defendant "must show that the deficient performance prejudiced the defense."  Id. at 687.  There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A petitioner must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  "The error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached."  State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694).

"With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence."  State v. Gaitan, 209 N.J. 339, 350 (2012) (citing State v. Echols, 199 N.J. 344, 357 (2009); State v. Goodwin, 173 N.J. 583, 593 (2002)).  The factual assertions providing the "predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing."  R. 3:22-10(c).  "[A]

petitioner must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). A failure to satisfy either prong of the Strickland standard requires the denial of a petition for PCR. Strickland, 466 U.S. at 700; Nash, 212 N.J. at 542; Fritz, 105 N.J. at 52.

Defendant claims the court erred by denying his petition without an evidentiary hearing because he presented sufficient evidence establishing a prima facie ineffective assistance of counsel claim. More particularly, he asserts that his supporting certification describing his substance abuse history and his purported used of heroin and alcohol during trial, and Dr. Jeffrey Singer's evaluation report, establish his counsel was ineffective by failing to investigate a diminished capacity defense and by failing to challenge his competency at trial. We consider and reject his arguments in turn.

A defendant may "present evidence of a mental disease or defect to 'negate the presence of an essential mental element of the crime.'" State v. Baum, 224 N.J. 147, 160 (2016) (quoting State v. Rivera, 205 N.J. 472, 487 (2011)); see also N.J.S.A. 2C:4-2 (providing in part "[e]vidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove

the defendant did not have the state of mind which is an element of the offense"). A diminished capacity defense is "a factor bearing on the presence or absence of an essential element of the crime as designated by the [Criminal] Code." Ibid. (quoting State v. Breakiron, 108 N.J. 591, 608 (1987), rev'd on other grounds, State v. Delibero, 149 N.J. 90, 101 (1997)). A diminished capacity defense may be raised if a defendant presents "evidence of a mental disease or defect that interferes with cognitive ability sufficient to prevent or interfere with the formation of the requisite intent or mens rea[,]" for the crime charged, ibid. (quoting State v. Galloway, 133 N.J. 631, 647 (1993)), and "the record contains evidence that the claimed deficiency did affect the defendant's cognitive capacity to form the mental state necessary for the commission of the crime," ibid. (quoting Galloway, 133 N.J. at 647).

Defendant's PCR petition does not provide any facts supporting a diminished capacity defense under the Baum standard to the charges for which he was convicted.[5] Even accepting as true defendant's alleged history of

---

[5] As noted, the jury convicted defendant of sexual assault, N.J.S.A. 2C:14-2(b), endangering the welfare of a child, N.J.S.A. 2C:24-4(a), and lewdness, N.J.S.A. 2C:14-4(b)(1). The sexual assault and endangering statutes do not expressly identify the mens rea required for the commission of those offenses, see N.J.S.A. 2C:14-2(b) and N.J.S.A. 2C:24-4(a), and, therefore, under N.J.S.A. 2C:2-2(c)(3), the State was required to prove defendant engaged in "knowing conduct"

substance abuse, his claim that his counsel's performance was deficient by failing to consider or investigate the defense is unsupported by any evidence that his substance abuse issues prevented or interfered with the formation of the requisite mens rea to commit the sexual assault, endangering, and lewdness crimes for which he was convicted. See ibid. Indeed, in his certification supporting the PCR petition, defendant provides a detailed rendition of what he contends occurred during the incidents in the bathroom with R.O., and then generally asserts he has a long history of substance abuse. He fails to assert any facts supporting a finding that his substance abuse history in any manner affected his ability to form the requisite mens rea of the crimes for which he was convicted.

---

to establish he committed those offenses, S.D. v. M.J.R., 415 N.J. Super. 417, 432 (App. Div. 2010). "A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence." N.J.S.A. 2C:2-2(b)(2). The lewdness statute, N.J.S.A. 2C:14-4(b)(1) requires that the State prove the actor commit prohibited acts with "purpose." "A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result." N.J.S.A. 2C:2-2(b)(1). Defendant does not address the mens rea requirements applicable to the crimes for which he was convicted or, as we explain, offer any evidence demonstrating his purported substance abuse history affected his ability to form them when he committed the crimes for which he was convicted.

A-4332-19

Dr. Singer's report also does not support defendant's claim. Dr. Singer summarizes defendant's assertion he suffered from substance abuse issues over a prolonged period of time, but Dr. Singer does not address or offer any opinion that defendant's substance abuse issues affected defendant's ability in 2014 to form the mens rea required to commit the crimes of sexual assault, endangering the welfare of a child, and lewdness for which he was convicted. Stated differently, Dr. Singer offers nothing supporting a diminished capacity defense to the charges under the Baum standard.

Thus, even assuming his counsel erred by failing to consider a diminished capacity defense, defendant failed to demonstrate he was prejudiced by the alleged error. A defendant asserting an ineffective assistance of counsel claim "must 'affirmatively prove prejudice.'" State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 693). Here, defendant failed to sustain that burden because he did not present any evidence that had his counsel considered a diminished capacity defense, there was evidence supporting the defense under the Baum standard. His counsel was not ineffective by failing to consider or assert a meritless defense. See State v. Worlock, 117 N.J. 596, 625 (1990) (stating "[t]he failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel"). Defendant therefore failed to

demonstrate there is a reasonable probability that had the defense been considered, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694. Defendant's failure to satisfy his burden under Strickland's second prong alone requires the rejection of this PCR claim. Gaitan, 209 N.J. at 350.

We are also not persuaded by defendant's claim his counsel was ineffective by failing to consider or challenge his competency to stand trial. A defendant is entitled to a competency hearing where evidence "raises a bona fide doubt" as to his or her competence. State v. Purnell, 394 N.J. Super. 28, 47 (App. Div. 2007). In Dusky v. United States, the United States Supreme Court defined the minimum requirements for a defendant's competence to stand trial. 362 U.S. 402, 402 (1960). The test is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." Purnell, 394 N.J. Super. at 47 (alteration in original) (quoting Dusky, 362 U.S. at 402); see also State v. Spivey, 65 N.J. 21, 36 (1974) ("One unable to comprehend his position, to consult intelligently with counsel and plan his defense cannot be put to trial" (quoting State v. Auld, 2 N.J. 426, 435 (1949))).

14

N.J.S.A. 2C:4-4 sets forth the statutory standard for determining competency. State v. M.J.K., 369 N.J. Super. 532, 547-48 (App. Div. 2004). The statute provides:

> a. No person who lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures.
>
> b. A person shall be considered mentally competent to stand trial on criminal charges if the proofs shall establish:
>
> (1) That the defendant has the mental capacity to appreciate his presence in relation to time, place and things; and
>
> (2) That his elementary mental processes are such that he comprehends:
>
> (a) That he is in a court of justice charged with a criminal offense;
>
> (b) That there is a judge on the bench;
>
> (c) That there is a prosecutor present who will try to convict him of a criminal charge;
>
> (d) That he has a lawyer who will undertake to defend him against that charge;
>
> (e) That he will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he

15

chooses to testify and understands the right not to testify;

(f) That there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if he should choose to enter into plea negotiations or to plead guilty, that he comprehend the consequences of a guilty plea and that he be able to knowingly, intelligently, and voluntarily waive those rights which are waived upon such entry of a guilty plea; and

(g) That he has the ability to participate in an adequate presentation of his defense.

[N.J.S.A. 2C:4-4.]

Defendant's claim his counsel was ineffective by failing to consider or challenge his competency is founded solely on his purported use of drugs and alcohol before and during the trial. Defendant bears the burden of establishing both prongs of the Strickland standard, Gaitan, 209 N.J. at 350, but his claim is otherwise untethered to any competent evidence his drug and alcohol use rendered him incompetent under the standard set forth in N.J.S.A. 2C:4-4. Defendant fails to point to any competent evidence his alleged drug and alcohol use affected, for example, his ability to understand the proceedings against him, appreciate his presence in relation to time, place, or things, or participate in an adequate presentation of his defense. See N.J.S.A. 2C:4-4. His supporting certification does not assert, address, or offer any evidence could not satisfy the

16

requirement for competency under N.J.S.A. 2C:4-4 such that but for this counsel's alleged error in failing to consider or raise the issue of his competency, there is a reasonable probability he would have been found incompetent and the result of his trial therefore would have been different. See Strickland, 466 U.S. at 694. Defendant's claim to the contrary is a bald assertion that that does not support a prima facie ineffective assistance of counsel claim. See Cummings, 321 N.J. Super. at 170.

Defendant's claim is also not supported by Dr. Singer's report because Dr. Singer did not evaluate defendant's competency. As he explained in the report, the purpose of his evaluation "was to assess what psychological factors may have impacted" defendant's September 12, 2014 decision to forego any further attendance at trial and travel to the Dominican Republic. Although Dr. Singer repeats defendant's self-reports of drug and alcohol use, his findings are limited; he opined only there was a "distinct and psychologically reasonable possibility that on the morning of September 12, 2014,"—the day defendant failed to appear for trial and traveled to the Dominican Republic—defendant "was laboring under paranoid ideas and delusions of reference, induced by a combination of heroin and Chantix."

In addressing defendant's mental state on September 12, 2014, the report offers nothing more than a "possibility" defendant suffered from paranoia and delusions on that date, but that possibility is untethered to any finding defendant suffered from any issue that would have rendered him incompetent under N.J.S.A. 2C:4-4. Thus, the limited opinion included in Dr. Singer's report does not establish that had defendant's counsel raised the issue during trial there is a reasonable probability the result of the trial, through a finding defendant was not competent, would have been different. See Strickland, 466 U.S. at 694.

Dr. Singer did not offer an opinion concerning defendant's actions or mental state on any of the days defendant actually attended the trial. At best, his report is therefore pertinent only to counsel's alleged ineffective assistance on September 12, 2014, and during the remaining three days of trial.

Even if Dr. Singer's report may be broadly read to suggest a possibility of paranoia and delusions that rendered defendant incompetent under N.J.S.A. 2C:4-4 on September 12, 2014, defendant's counsel was not ineffective by failing, at that time, to raise the issue of defendant's competency. That is because there is no evidence counsel knew, or had reason to know, of the issues related to defendant's mental state based on the alleged facts supporting Dr. Singer's opinion.

On September 12, 2014, defendant provided false information to his counsel about the reason he failed to appear at trial, and in support of his PCR petition defendant did not present evidence his counsel had reason to question his competency under the statutory standard on that date. Defendant's counsel was not ineffective by failing, on September 12, 2014, to assert a competency claim based on purported facts defendant did not disclose and about which counsel did not have knowledge—the alleged mixture of heroin and Chantix Dr. Singer two-years later said created the "possibility" defendant suffered from paranoia and delusions. See Wiggins v. Smith, 539 U.S. 510, 523 (2003) (explaining when assessing counsel's investigation, "[courts] must conduct an objective review of their performance . . . which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time'" (quoting Strickland, 466 U.S. at 688)); c.f. Harris, 181 N.J. at 402 (finding no ineffective assistance of counsel claim where a medical expert "mentioned the possibility of a neurologic impairment or organic problem" but counsel elected not to pursue this line of inquiry further).

Moreover, once defendant returned to the United States, his counsel promptly made a motion for a new trial founded in part on the claim for which defendant relies on Dr. Singer's report—that he was incompetent on September

12, 2014, when he fled to the Dominican Republic. Defendant does not claim his counsel was ineffective in making the motion for the new trial, and defendant does not present any evidence that was the case. And, as noted, the court rejected defendant's claim he was not competent during the trial, including on September 12, 2014, and denied the motion, and we affirmed the court's order. N.K., (slip op. at 13).

Defendant failed to establish his counsel's performance was deficient by failing to challenge his competency on September 12, 2014; counsel raised that precise issue in the new trial motion. Because his counsel challenged his competency on September 12, 2014 in the new trial motion, and the court found defendant was competent throughout the trial, defendant also failed to demonstrate that but for his counsel's purported error in failing to raise the singular issue of competency for which defendant relies on Dr. Singer's report— defendant's mental state on September 12, 2014—there is a reasonable probability the result of the trial would have been different. See Strickland, 466 U.S. at 694. In fact, we know the result of the trial would not have been different due to counsel's alleged error because the court determined defendant was competent at all times during trial, and we affirmed that determination on defendant's direct appeal.

20

A-4332-19

In sum, we reject defendant's PCR claim his counsel was ineffective by failing to raise the issue of defendant's competency at trial. Defendant failed to present competent evidence satisfying his burden under both prongs of the Strickland standard, see ibid., and for that reason he failed to establish a prima facie ineffective-assistance-of-counsel claim, see Strickland, 466 U.S. at 687; Nash, 212 N.J. at 542.

We also reject defendant's claim the court erred by denying his petition without an evidentiary hearing. Defendant's failure to sustain his burden of presenting a prima facie case under both prongs of the Strickland standard as to each of his claims required the denial of his PCR petition. Strickland, 466 U.S. at 700; Nash, 212 N.J. at 542. The PCR court correctly denied the petition without an evidentiary hearing because defendant did not establish a prima facie claim of ineffective assistance of counsel. State v. Preciose, 129 N.J. 451, 462 (1992); see also R. 3:22-10(b) (providing one of the requirements for a defendant's entitlement to an evidentiary hearing on a PCR petition is the "establishment of a prima facie case in support of post-conviction relief").

Any arguments asserted on defendant's behalf we have not addressed directly are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

A-4332-19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4332-19